UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| In re ACTIVE WEAR, INC., ) | Bankruptcy Case No. 04-01780-WA4-11 |
| ) | |
| Debtor, ) | |
| ) | |
| ACTIVE WEAR, INC., ) | |
| ) | Bankruptcy Adversary Proceeding No. 04- |
| Plaintiff, ) | 00055 |
| ) | |
| v. ) | |
| ) | |
| ML INDUSTRIES, INC., fka Major League, ) | |
| Inc., ) | |
| ) | |
| Defendant, ) | |
| ) | |
| ) | |

**MEMORANDUM**

This matter comes before the court on a motion to approve compromise filed by Active

Wear, Inc., ("the Plaintiff").  This court has jurisdiction over this motion.  28 U.S.C. §§ 1334(a)

& 157(a).  This is a core proceeding.  28 U.S.C. § 157(b)(2).  Accordingly, this court may render

1

a final order.

*Facts*

Active Wear, Inc., ("the Plaintiff") is a corporation, wholly owned by Mickey T. Dunn, Kenneth R. Schrang, R. Wayne Hill and Tony E. Worthington ("the Insiders"). Pre-petition, the Plaintiff processed yarn into cloth goods. The cloth goods were then shipped to International Cutting, Inc., ("ICI") in Mexico where the cloth was cut in preparation for assembly as sports apparel, primarily t-shirts and sweatshirts. The cut goods were then sold to companies that sewed them into the sports apparel. ML Industries, Inc., formerly known as Major League, Inc., ("the Defendant") was the primary customer of the cut goods. The Defendant's plant operations are also located in Mexico. Mickey Dunn is a major equity holder in the Defendant.

While the precise nature of the business relationship between the Plaintiff, ICI, and the Defendant is unclear, it is clear that (1) the Plaintiff paid certain expenses for ICI; (2) the Defendant paid the Plaintiff directly when it received the cut goods; and (3) ICI and the Plaintiff adjusted accounts between them by making periodic payments.

In February of 2004, the Plaintiff ceased operations and began liquidating its assets. On May 5, 2004, an involuntary chapter 7 petition for relief was filed against the Plaintiff. Within twenty days of that date, the Plaintiff converted the case to a voluntary chapter 11 case.

On June 29, 2004, the Plaintiff filed the instant complaint seeking to recover the delinquent receivables. In the complaint, the Plaintiff asserts that the Defendant owed the Plaintiff $1,665,568.27 as of the date of petition based on goods delivered.

On October 6, 2004, a scheduling order[1] was entered that set the discovery deadline on

---

[1] Docket #21 in this Adversary Proceeding.

January 17, 2005 and set the trial for February 16, 2005.   At the hearing on February 16, 2005, the trial was continued to May 4, 2005, to permit the parties to engage in further settlement discussions.  On March 17, 2005, the Plaintiff filed a motion to compromise and settle its claim against the Defendant pursuant to Fed. R. Bankr. P. 9019.[2]  The motion to approve compromise was supported by exhibits including a Settlement and Release Agreement.  The notice of the motion for settlement provided that any party wishing to oppose the settlement should, on or before April 1, 2005, file an objection and set the matter for hearing.  On April 1, 2005, Parkdale, Inc., ("Parkdale") the Plaintiff's largest unsecured creditor with a claim of over $2,000,000.00, filed an objection to the motion to approve compromise.[3]  The objection set the matter for hearing on April 6, 2005.

On that date, the matter was continued by order ("the Continuation Order")[4] to May 18, 2005, to give Parkdale an opportunity to conduct further inquiry concerning possible pre-petition, insider-related activities involved the Plaintiff, the Defendant and Mr. Dunn.   The Continuation Order continuing the hearing, entered on docket on April 26, 2005, directed the Defendant to produce to Parkdale certain described documents concerning its relationship with ICI as well as its financial statements and tax returns for the tax years 2003 and 2004.  The Continuation Order also directed Mr. Dunn to do the same.

The Continuation Order also provided that Parkdale should, on or before May 4, 2005, notify the Court, counsel for the Plaintiff, counsel for the Defendant and counsel for Mr. Dunn if it believed that it had a good faith basis for its opposition to the motion to approve compromise.

---

[2] Docket #28 in this Adversary Proceeding.

[3] Docket # 229 in the Active Wear, Inc., Parent Case, Case No. 04-01780.

[4] Docket #31 in this Adversary Proceeding

3

The Continuation Order also provided that if Parkdale gave such notice, Mr. Dunn would make himself available for deposition on or before May 11, 2005, if requested to do so.   Parkdale did not seek to depose Mr. Dunn, Mr. Huckfeldt, or any other person.

The Plaintiff produced "thousands of documents" for Parkdale's examination.[5]  Parkedale received the last of the requested documents on May 1, 2005.  On May 6, 2005, Parkdale filed a notice of continuing objection to the motion for approval of the settlement.  The notice is deemed timely file because counsel for Parkdale did not receive the documents until May 1, 2005, four days after they were due under the continuation order.  The notice of continuing objection provided no basis for the objection.  Parkdale did not file any motions to compel additional discovery.

At the hearing on May 18, 2005, the debtor presented evidence in support of the motion in the form of testimony by its liquidating agent, Paul Huckfeldt.   Parkdale cross-examined Mr. Huckfeldt.

The principle terms of the Settlement and Release are as follows:

(1) The Defendant will pay the Plaintiff a total of $625,000.00.   The Defendant will pay $150,000.00 upon the approval of this compromise, and will further pay quarterly installments in the amount of $118,750.00 each beginning on July 31, 2005 and continuing each 90 days thereafter until the $625,000.00 is paid in full.

(2) The $625,000.00 obligation will be evidenced by a promissory note, which shall accrue interest at the rate of 6% per annum, payable only in the event of a default by the Defendant.  The promissory note shall contain a confession of judgment by the Defendant and

---

[5] Statement of Michael Hastings, counsel for Parkdale, at hearing on May 18, 2005.  See Transcript, p. 93.

4

Mr. Dunn, making them jointly and severally liable in the event of default. Mr. Dunn shall personally guarantee the payment of the Promissory Note.

(3) Payment in full under the note shall constitute full settlement in satisfaction of all claims the Debtor had or has against the Defendant as of the date of the Settlement Agreement and Release.

(4) The Settlement and Release Agreement provides for a release of all claims against the Defendant and its "attorneys, directors officers, employees, representatives, affiliates, partners, successors an assigns, and Dunn individually, from all claims, actions and demands, of whatever kind or nature which the Debtor ever had or has as of the date of this Settlement Agreement and Release, and hereby covenants not to sue [the Defendant] or [Mr.] Dunn in relations to such claims, actions and demands."

(5) The Settlement and Release Agreement provides for a release of all claims by the Defendant against the Plaintiff and its "attorneys, directors, officers, employees, representatives, affiliates, partners, successors and assigns, and Dunn individually, from all claims, actions and demands, of whatever kind or nature which the [the Defendant and/or Mr. Dunn] ever had or has as of the date of this Settlement Agreement and Release . . ."

*Discussion*

A. The Standard for Approving a Compromise under Fed. R. Bankr. P. 9020.

The court may approve a motion for compromise or settlement by the trustee after notice and a hearing. Fed. R. Bankr. P. 9019. With some limitations not applicable here, a debtor-in-possession shall perform all the functions and duties of a chapter 11 trustee. 11 U.S.C. §1107(a). "After notice and a hearing", or similar phrase, means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular

5

circumstances, and authorizes the granting of the requested relief if a hearing is not requested timely by a party in interest after proper notice. 11 U.S.C. § 102(1).

Courts setting a standard for approval of compromise under Rule 9019 take their guidance from the Supreme Court case of Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. V. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L. Ed. 2d 1, 9 (1968), which provides that the bankruptcy judge should apprise "himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." TMT, 390 U.S. at 424-25, 88 S.Ct. at 1163, 20 L. Ed. 2d at 9.

Based on the above guidance, the Bankruptcy Court is to consider the following factors in deciding whether to approve a compromise: (a) the probability of success in the litigation; (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity, expense, inconvenience, and delay attendant to continued litigation; and (d) the paramount interest of creditors. 4 Collier on Bankruptcy, "Exceptions to Discharge", ¶ 523.04, p. 523-19 (15th ed. rev.) (citing Jeffrey v. Desmond, 70 F.3ed 183, 185 (1st Cir. 1995); Martin v. Kane (In re A&C Properties), 784 F.2d 1377 99th Cir.), cert. denied sub nom. Martin v. Robinson, 479 U.S. 854, 107 S.Ct. 189, 93 L. Ed. 2d 122 (1986); Drexel Burnham Lambert, Inc. v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.), 730 F.2d 1128 (8th Cir. 1984) cert. denied sub nom. Reavis & McGrath v. Antinore, 4679 U.S. 1207, 105 S.Ct. 1169, 84 L. Ed. 2d 320 (1985).

In assessing the compromise, the Bankruptcy Court is to review the issues and determine whether the compromise falls within a reasonable range.

> In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement "fall[s] below the lowest point in the range of reasonableness", *Newman v. Stein,* 464 F.2d 689, 693 (2 Cir.), *cert. denied sub nom. Benson v. Newman,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). We shall not attempt to deal with every argument advanced by appellants but will concentrate on what seem the most nearly persuasive.

In re W.T. Grant, 699 F. 2d. 599, 608 (2nd Cir. 1983).

Finally, it should be noted that a debtor-in-possession or trustee is placed in an awkward situation when bringing a motion to approve compromise. It is required to present evidence concerning the weakness of its underlying case. This requirement is made even though the trustee or debtor-in-possession will have to take the opposite position if the motion is denied. Accordingly, courts should not expect that the arguments and evidence supporting the motion will be as forceful as in contested motions.

    B. The Compromise.

As noted above, the court is to consider four factors in deciding whether or not to approve a compromise: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity, expense, inconvenience, and delay attendant to continued litigation; and (d) the paramount interest of creditors.

*Probability of Success.* The first issue to be considered is the probability that the debtor-in-possession would have prevailed on its complaint. There is a high probability that the Plaintiff would be able to demonstrate at trial that the Defendant owes the Plaintiff some amount of money. That amount would probably not be the $1,665,568.27 that is pleaded in the

complaint. The Defendant has asserted that the claim is subject to an offset of at least $660,000.00 based on defective goods, mismatched goods, and late delivery of goods.[6] Mr Huckfeldt testified that the Plaintiff admits that the Defendant would have a strong argument regarding an offset in an amount at least this large.[7] If the Plaintiff were to prevail at trial, it would probably receive a judgment in an amount between $1,000,000.00 and $1,200,000.00.[8]

*Difficulties in Collection.* The difficulty of collection in this case is an important element for consideration. At trial, Mr. Huckfeldt testified that ML Industries could probably pay the $625,000.00, but that it would be difficult because they were in difficult financial circumstances.[9] He also testified that he believed that the Defendant was highly leveraged[10] and that the Defendant had asserted that a judgment for the full amount of the complaint would cause it to seriously consider filing a petition in bankruptcy itself.[11] If the Defendant did file a petition in bankruptcy, the Plaintiff could expect to collect virtually nothing on its claim.

*Complexity, Expense, Inconvenience, and Delay.* The litigation would not be particularly complex legally, but would be complex factually. The Plaintiff and Defendant would be required to consider and compare both parties' records concerning hundreds of invoices, both in Mexico and in the United States.[12] The continued prosecution of this adversary proceeding

---

[6] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 36.

[7] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 36.

[8] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, pp. 37-38.

[9] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 39.

[10] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 40.

[11] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 39.

[12] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 41.

would not result in additional attorneys' fees (counsel for the Plaintiff has taken the case on contingency basis), but the Plaintiff could incur significant costs in the form of travel expenses and expert witnesses. Furthermore, the litigation could take another six months or more, further delaying the progress of the Plaintiff's case and the distribution to creditors.

*Paramount Interest of Creditors.* Under the settlement, the estate will receive $625,000.00. In exchange for accepting an amount that is less than that in the request for relief, the Plaintiff has avoided significant litigation costs, has avoided potential collection costs, and has assured the receipt of a significant asset for the estate. Further, in return for obtaining Mr. Dunn's personal guarantee on the note, the Plaintiff will waive any claims against Mr. Dunn, the Defendant or its affiliates.

Parkdale argues that the settlement is not in the paramount interest of creditors because the debtor is waiving its right to file unrelated actions against ML Industries, Mr. Dunn, and their affiliates. Parkdale asserts that the Plaintiff has been less than candid with its creditors and with the court. Specifically, it asserts that the debtor and ICI both controlled the same bank account and that Mr. Dunn now possess equipment that was located on the ICI premises and that might be owned by the Plaintiff. Mr. Huckfeldt testified that the Plaintiff, at the time of its start-up, had purchased cutting equipment as well as weaving equipment in a bulk purchase from VF Imagewear. He testified that the equipment was sent to ICI in Mexico, that the debtor owned the equipment, that the equipment was part of the approximately $1,500,000.00 that was disclosed on the debtor's schedules, that the equipment was estimated to be worth between $50,000.00 and $100,000.00 at the beginning of the case, and that the Plaintiff had received offers for about

$25,000.00 for the equipment.[13] Mr. Huckfeldt also testified that the Plaintiff had transferred about $8,000.00 worth of manual cutting equipment to the Defendant's Mexico facility when the Plaintiff began to shutdown (pre-petition) in an effort to try to maximize the value of assets.[14] He later testified that the estimate of $8,000.00 was based on his review of correspondence between Mr. Hill and Mr. Dunn.[15]

The real problems with Parkdale's argument is that, after ample opportunity to prepare for this hearing, Parkdale has presented no evidence concerning either the control of the bank account or ownership of assets.

Parkdale has not demonstrated that the release of claims against Mr. Dunn and the Defendant causes the compromise to be not in the best interest of creditors. The problem is that Parkdale did not prepare for this hearing even though it has been active in the bankruptcy case in chief from its inception. Parkdale conducted no depositions in preparation for the hearing on this matter even though it was specifically granted the right to depose Mr. Dunn. Parkdale could have deposed Mr. Huckfeldt, or any of a number of other parties under Fed. R. Bankr. P. 2004 at any time during the pendency of this case. Parkdale did not file with the clerk of this court any motions to compel the additional production of documents or discovery in any other form, either from the Plaintiff or any other party. Nor did Parkdale request a continuance of the May 18, 2005, hearing for the purpose of reviewing the large volume of documents produced for this hearing.

This case is more than a year old. This adversary proceeding is more than ten months

---

[13] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 44.

[14] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 48.

[15] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 50.

old. While this court believes that Parkdale's allegations implicate the existence of facts that could support disturbing conclusions, Parkdale has failed during the past year to take steps to prepare a record on which this court could make findings in accordance with such allegations.[16]

Accordingly, the court accepts the Plaintiff's position that the releases are a fair exchange for the receipt of Mr. Dunn's guarantee of the $625,000.00 note. It is concluded that the compromise is in the paramount interest of creditors.

C. The Contractual Nature of the Releases of claims against Mr. Dunn

The Settlement and Release Agreement releases any claims that the Plaintiff may have against Mr. Dunn, whether known or unknown, in exchange for his personal guarantee that the Defendant will make the payments as agreed in the Settlement and Release Agreement. While the court has no specific evidence before it that this release has any value, it could potentially be of some value to Mr. Dunn, especially if some of Parkdale's allegations should prove to be correct. Because a release is something that does not require an affirmative act and because the payment of money does require an affirmative act, the motion to approve compromise will be granted only if it provides that either the Defendant or Mr. Dunn timely pays each installment of the $625,000.00. This provision will shall be made a condition precedent to the releases contained in paragraph 5 of the Settlement and Release Agreement that was filed as Exhibit A to the Motion to Approve Compromise filed on March 17, 2005, and entered on docket as docket no. 28. Each payment shall be deemed to be timely if it is made within 30 days of the date due under the Settlement and Release Agreement.

---

[16] At the end of the hearing on May 18, 2005, Parkdale requested more time to present exhibits. The court denied that last minute request because Parkdale failed to conduct pre-hearing depositions, failed to file a motion to compel additional discovery prior to the hearing, failed to ask for a continuance prior to the hearing to examine the documents that were produced, and failed to file a pre-hearing objection specifying even a summary of the reasons for the objection.

*Conclusion*

The proposed settlement is in the best interest of creditors. It falls well above the bottom of the range of outcomes that would be considered reasonable. While the release of Mr. Dunn provides an unknown cost to the settlement, the court approves that release in light of the lack of evidence supporting Parkdale's allegations and on the condition that timely payment of the $625,000.00 is made a condition precedent to the release.

Upon entry of this memorandum, the Clerk shall forward a copy to Patrick T. Fennell, Esq., counsel for the Plaintiff, Kyle R. Weems, Esq., counsel for the Defendant, Deborah L. Fletcher, Esq., counsel for the Parkdale, Inc., Michael E. Hastings, Esq., counsel for the Parkdale, Inc., Luis A. Abreu, Esq., counsel for Mickey T. Dunn and the United States trustee.

Entered on this ___7th___ day of June, 2005.

                         William E. Anderson
                         United States Bankruptcy Judge