**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | |
|---|---|
| In re ACTIVE WEAR, INC.,  )<br>  )<br>　　　　Debtor,  )<br>  )<br>ACTIVE WEAR, INC.,  )<br>  )<br>　　　　Plaintiff,  )<br>  )<br>v.  )<br>  )<br>ML INDUSTRIES, INC., fka Major League,  )<br>Inc.,  )<br>  )<br>　　　　Defendant,  )<br>  )<br>  ) | Bankruptcy Case No. 04-01780-WA4-11<br><br><br><br>Bankruptcy Adversary Proceeding No. 04-00055 |

## MEMORANDUM ON AMENDED ORDER
## APPROVING COMPROMISE

This matter comes before the court on a motion to alter or amend an order of this court[1] ("the Original Compromise Order") approving compromise filed by Active Wear, Inc., ("the Plaintiff"). This court has jurisdiction over this motion. 28 U.S.C. §§ 1334(a) & 157(a). This is a core proceeding. 28 U.S.C. § 157(b)(2). Accordingly, this court may render a final order.

### *Facts*

Active Wear, Inc., ("the Plaintiff") is a corporation, wholly owned by Mickey T. Dunn, Kenneth R. Schrang, R. Wayne Hill and Tony E. Worthington ("the Insiders"). Pre-petition, the

---

[1] The order was entered on docket on June 6, 2005, as docket no. 42 in this adversary proceeding.

1

Plaintiff processed yarn into cloth goods. The cloth goods were then shipped to International Cutting, Inc., ("ICI") in Mexico where the cloth was cut in preparation for assembly as sports apparel, primarily t-shirts and sweatshirts. The cut goods were then sold to companies that sewed them into the sports apparel. ML Industries, Inc., formerly known as Major League, Inc., ("the Defendant") was the primary customer of the cut goods. The Defendant's plant operations are also located in Mexico. Mickey Dunn is a major equity holder in the Defendant.

While the precise nature of the business relationship between the Plaintiff, ICI, and the Defendant is unclear, it is clear that (1) the Plaintiff paid certain expenses for ICI; (2) the Defendant paid the Plaintiff directly when it received the cut goods; and (3) ICI and the Plaintiff adjusted accounts between them by making periodic payments.

In February of 2004, the Plaintiff ceased operations and began liquidating its assets. On May 5, 2004, an involuntary chapter 7 petition for relief was filed against the Plaintiff. Within twenty days of that date, the Plaintiff converted the case to a voluntary chapter 11 case.

On June 29, 2004, the Plaintiff filed the instant complaint seeking to recover the delinquent accounts receivable. In the complaint, the Plaintiff asserts that the Defendant owed the Plaintiff $1,665,568.27 as of the date of petition based on goods delivered.

On October 6, 2004, a scheduling order[2] was entered that set the discovery deadline on January 17, 2005 and set the trial for February 16, 2005. At the hearing on February 16, 2005, the trial was continued to May 4, 2005, to permit the parties to engage in further settlement discussions. On March 17, 2005, the Plaintiff filed a motion to compromise [3] and settle its claim

---

[2]     Docket #21 in this Adversary Proceeding.

[3]     Docket #28 in this Adversary Proceeding.

2

against the Defendant pursuant to Fed. R. Bankr. P. 9019.  The motion to approve compromise was supported by exhibits including a Settlement and Release Agreement.  The notice of the motion for settlement provided that any party wishing to oppose the settlement should, on or before April 1, 2005, file an objection and set the matter for hearing.  On April 1, 2005, Parkdale, Inc., ("Parkdale") the Plaintiff's largest unsecured creditor with a claim of approximately $2,000,000.00, filed an objection to the motion to approve compromise.[4]  The objection set the matter for hearing on April 6, 2005.

On that date, the matter was continued by order ("the Continuation Order")[5] to May 18, 2005, to give Parkdale an opportunity to conduct further inquiry concerning possible pre-petition, insider-related activities involving the Plaintiff, the Defendant and Mr. Dunn.   The Continuation Order continuing the hearing, directed the Defendant  to provide Parkdale with certain documents concerning its relationship with ICI as well as its financial statements and tax returns for the tax years 2003 and 2004.  The Continuation Order also directed Mr. Dunn to do the same.        The Continuation Order also provided that Parkdale should, on or before May 4, 2005,  notify the Court, counsel for the Plaintiff, counsel for the Defendant and counsel for Mr. Dunn if it believed that it had a good faith basis for its opposition to the motion to approve compromise.   The Continuation Order also provided that if Parkdale gave such notice, Mr. Dunn would make himself available for deposition on or before May 11, 2005, if requested to do so.  Parkdale did not seek to depose Mr. Dunn, Mr. Huckfeldt, or any other person.

---

[4]    Docket # 229 in the Active Wear, Inc., Parent Case, Case No. 04-01780.

[5]    Docket #31 in this Adversary Proceeding

3

The Plaintiff produced "thousands of documents" for Parkdale's examination.[6] Parkdale received the last of the requested documents on May 1, 2005. On May 6, 2005, Parkdale filed a notice of continuing objection to the motion for approval of the settlement. The Court deemed the notice to be timely filed because counsel for Parkdale did not receive the documents until May 1, 2005, four days after they were due under the continuation order. The notice of continuing objection provided no basis for the objection. Parkdale did not file any motions to compel additional discovery.

At the hearing on May 18, 2005, the debtor presented evidence in support of the motion in the form of testimony by its liquidating agent, Paul Huckfeldt. Parkdale cross-examined Mr. Huckfeldt.

The principle terms of the Settlement and Release are as follows:

(1) The Defendant will pay the Plaintiff a total of $625,000.00. The Defendant will pay $150,000.00 upon the approval of this compromise, and will further pay quarterly installments in the amount of $118,750.00 each beginning on July 31, 2005 and continuing each 90 days thereafter until the $625,000.00 is paid in full.

(2) The $625,000.00 obligation will be evidenced by a promissory note, which shall accrue interest at the rate of 6% per annum, payable only in the event of a default by the Defendant. The promissory note shall contain a confession of judgment by the Defendant and Mr. Dunn, making them jointly and severally liable in the event of default. Mr. Dunn shall personally guarantee the payment of the Promissory Note.

(3) Payment in full under the note shall constitute full settlement in satisfaction of all

---

[6] See Statement of Michael Hastings, counsel for Parkdale, at hearing on May 18, 2005. See Transcript, p. 93.

4

claims the Debtor had or has against the Defendant as of the date of the Settlement Agreement and Release.

(4) The Settlement and Release Agreement provides for a release of all claims against the Defendant and its "attorneys, directors officers, employees, representatives, affiliates, partners, successors an assigns, and Dunn individually, from all claims, actions and demands, of whatever kind or nature which the Debtor ever had or has as of the date of this Settlement Agreement and Release, and hereby covenants not to sue [the Defendant] or [Mr.] Dunn in relations to such claims, actions and demands."

(5) The Settlement and Release Agreement provides for a release of all claims by the Defendant against the Plaintiff and its "attorneys, directors, officers, employees, representatives, affiliates, partners, successors and assigns, and Dunn individually, from all claims, actions and demands, of whatever kind or nature which the [the Defendant and/or Mr. Dunn] ever had or has as of the date of this Settlement Agreement and Release . . ."

On June 6, 2005, this Court entered the Original Compromise Order granting the motion. The Order conditioned Mr. Dunn's releases under the compromise on his timely making all of the payments under the compromise. On June 16, 2005, Mr. Dunn filed a motion to alter or amend the Original Compromise Order.

*Discussion*

Mr. Dunn argues that the court may either grant or deny or a motion to approve compromise, but may not conditionally grant such a motion. He cites Continental Airlines, Inc., v. Air Line Pilots Ass'n, Int'l. ( In re Continental Airlines Corp.), 907 F.2d 1500, 1507- 1509 (5th Cir. 1990) in support of the argument. In that case, the Fifth Circuit Court of Appeals ruled that the bankruptcy court did not have the authority to "condition its approval of a settlement upon

judicial modification of what it perceives to be an 'unfair' negotiated labor settlement when those labor grounds are unrelated to the substantive provision of the Bankruptcy Code. Id. at 1508. In this case, it is not clear at all that the condition required by the court is unrelated to the bankruptcy code. A bankruptcy court has a duty to apply the tenets of the bankruptcy code in a manner that will permit the trustee or debtor-in-possession to maximize the size of the estate for the benefit of creditors.[7]

The foregoing notwithstanding, it is clear that this court cannot impose the condition upon Mr. Dunn. Accordingly, the court will consider of the compromise as filed from the beginning.

A. The Standard for Approving a Compromise under Fed. R. Bankr. P. 9020.

The court may approve a motion for compromise or settlement by the trustee after notice and a hearing. Fed. R. Bankr. P. 9019. With some limitations not applicable here, a debtor-in-possession shall perform all the functions and duties of a chapter 11 trustee. 11 U.S.C. §1107(a). "After notice and a hearing", or similar phrase, means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances, and authorizes the granting of the requested relief if a hearing is not requested timely by a party in interest after proper notice. 11 U.S.C. § 102(1).

Courts setting a standard for approval of compromise under Rule 9019 take their guidance from the Supreme Court case of Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. V. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L. Ed. 2d 1, 9 (1968), which provides that the bankruptcy judge should apprise "himself of all facts necessary

---

[7] See Wanamaker v. Falcey, et al. v. Wanamaker (In re Riverside Associates, Ltd., 185 F.3d 875 (10th Cir. 1999) (Unpublished Opinion) for a discussion on this point.

for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." TMT, 390 U.S. at 424-25, 88 S.Ct. at 1163, 20 L. Ed. 2d at 9.

Based on the above guidance, the Bankruptcy Court is to consider the following factors in deciding whether to approve a compromise: (a) the probability of success in the litigation; (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity, expense, inconvenience, and delay attendant to continued litigation; and (d) the paramount interest of creditors. 4 Collier on Bankruptcy, "Exceptions to Discharge", ¶ 523.04, p. 523-19 (15th ed. rev.) (citing Jeffrey v. Desmond, 70 F.3ed 183, 185 (1st Cir. 1995); Martin v. Kane (In re A&C Properties), 784 F.2d 1377 99th Cir.), cert. denied sub nom. Martin v. Robinson, 479 U.S. 854, 107 S.Ct. 189, 93 L. Ed. 2d 122 (1986); Drexel Burnham Lambert, Inc. v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.), 730 F.2d 1128 (8th Cir. 1984) cert. denied sub nom. Reavis & McGrath v. Antinore, 4679 U.S. 1207, 105 S.Ct. 1169, 84 L. Ed. 2d 320 (1985).

In assessing the compromise, the Bankruptcy Court is to review the issues and determine whether the compromise falls within a reasonable range.

> In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement "fall[s] below the lowest point in the range of reasonableness", *Newman v. Stein,* 464 F.2d 689, 693 (2 Cir.), *cert. denied sub nom. Benson v. Newman,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). We shall not attempt to deal with every argument advanced by appellants but will concentrate on what

seem the most nearly persuasive.

In re W.T. Grant, 699 F. 2d. 599, 608 (2nd Cir. 1983).

Finally, it should be noted that a debtor-in-possession or trustee is placed in an awkward situation when bringing a motion to approve compromise. It is required to present evidence concerning the weakness of its underlying case. This requirement is made even though the trustee or debtor-in-possession will have to take the opposite position if the motion is denied. Accordingly, courts should not expect that the arguments and evidence supporting the motion will be as forceful as in contested motions.

B. The Compromise.

As noted above, the court is to consider four factors in deciding whether or not to approve a compromise: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity, expense, inconvenience, and delay attendant to continued litigation; and (d) the paramount interest of creditors.

*Probability of Success.* The first issue to be considered is the probability that the debtor-in-possession would have prevailed on its complaint. There is a high probability that the Plaintiff would be able to demonstrate at trial that the Defendant owes the Plaintiff some amount of money. That amount would probably not be the $1,665,568.27 that is pleaded in the complaint. The Defendant has asserted that the claim is subject to an offset of at least $660,000.00 based on defective goods, mismatched goods, and late delivery of goods.[8] Mr Huckfeldt testified that the Plaintiff admits that the Defendant would have a strong argument

---

[8] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 36.

regarding an offset in an amount at least this large.[9]  If the Plaintiff were to prevail at trial, it would probably receive a judgment in an amount between $1,000,000.00 and $1,200,000.00.[10]

*Difficulties in Collection.*   The difficulty of collection in this case is an important element for consideration.  At trial, Mr. Huckfeldt testified that the Defendant could probably pay the $625,000.00, but that it would be difficult because they were in difficult financial circumstances.[11]  He also testified that he believed that the Defendant was highly leveraged[12] and that the Defendant had asserted that a judgment for the full amount of the complaint would cause it to seriously consider filing a petition in bankruptcy itself.[13]  If the Defendant did file a petition in bankruptcy, the Plaintiff could expect to collect virtually nothing on its claim.

*Complexity, Expense, Inconvenience, and Delay.*  The litigation would not be particularly complex legally, but would be complex factually.   The Plaintiff and Defendant would be required to consider and compare both parties' records concerning hundreds of invoices, both in Mexico and in the United States.[14]   The continued prosecution of this adversary proceeding would not result in additional attorneys' fees (counsel for the Plaintiff has taken the case on contingency basis), but the Plaintiff could incur significant costs in the form of travel expenses and expert witnesses.  Furthermore, the litigation could take another six months or more, further delaying the progress of the Plaintiff's case and the distribution to creditors.

---

[9] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 36.

[10] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, pp. 37-38.

[11] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 39.

[12] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 40.

[13] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 39.

[14] Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 41.

*Paramount Interest of Creditors.*   Under the settlement, the estate will receive $625,000.00.  In exchange for accepting an amount that is less than that in the request for relief, the Plaintiff has avoided significant litigation costs, has avoided potential collection costs, and has assured the receipt of a significant asset for the estate.  Further, in return for obtaining Mr. Dunn's personal guarantee on the note, the Plaintiff will waive any claims against Mr. Dunn, the Defendant or its affiliates.

Parkdale argues that the settlement is not in the paramount interest of creditors because the debtor is waiving its right to file unrelated actions against the Defendant, Mr. Dunn, and their affiliates.  Parkdale asserts that the Plaintiff has been less than candid with its creditors and with the court.  Specifically, it asserts that the debtor and ICI both controlled the same bank account and that Mr. Dunn now possess equipment that was located on the ICI premises and that might be owned by the Plaintiff.   Mr. Huckfeldt testified that the Plaintiff, at the time of its start-up, had purchased cutting equipment as well as weaving equipment in a bulk purchase from VF Imagewear.  He testified that the equipment was sent to ICI in Mexico, that the debtor owned the equipment, that the equipment was part of the approximately $1,500,000.00 that was disclosed on the debtor's schedules, that the equipment was estimated to be worth between $50,000.00 and $100,000.00 at the beginning of the case, and that the Plaintiff had received offers for about $25,000.00 for the equipment.[15]  Mr. Huckfeldt also testified that the Plaintiff had transferred about $8,000.00 worth of manual cutting equipment to the Defendant's Mexico facility when the Plaintiff began to shutdown (pre-petition) in an effort to try to maximize the value of assets.[16]

---

[15]    Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 44.

[16]    Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 48.

He later testified that the estimate of $8,000.00 was based on his review of correspondence between Mr. Hill and Mr. Dunn.[17]

The real problems with Parkdale's argument is that, after ample opportunity to prepare for this hearing, Parkdale has presented no evidence concerning either the control of the bank account or ownership of assets.

The releases of claims against Mr. Dunn and the Defendant do not cause the compromise to be beyond the best interest of creditors. Parkdale has not demonstrated otherwise. Nor has Parkdale taken steps to discover information that would support such a position. Parkdale did not prepare for this hearing even though it has been active in the bankruptcy case in chief from its inception. Parkdale conducted no depositions in preparation for the hearing on this matter even though it was specifically granted the right to depose Mr. Dunn. Parkdale could have deposed Mr. Huckfeldt, or any of a number of other parties under Fed. R. Bankr. P. 2004 at any time during the pendency of this case. Parkdale did not file with the clerk of this court any motions to compel the additional production of documents or discovery in any other form, either from the Plaintiff or any other party. Nor did Parkdale request a continuance of the May 18, 2005, hearing for the purpose of reviewing the large volume of documents produced for this hearing.

This case is more than a year old. This adversary proceeding is more than ten months old. While this court believes that Parkdale's allegations implicate the existence of facts that could support disturbing findings, Parkdale has failed during the past year to take steps to

---

[17]    Testimony of Paul Huckfeldt at hearing on May 18, 2005, Transcript, p. 50.

11

prepare a record on which this court could make findings in accordance with such allegations.[18]

Accordingly, the court accepts the Plaintiff's position that the releases are a fair exchange for the receipt of Mr. Dunn's guarantee of the $625,000.00 note. It is concluded that the compromise is in the paramount interest of creditors.

### *Conclusion*

The proposed settlement falls well above the bottom of the range of outcomes that would be considered reasonable. While the releases granted to Mr. Dunn provide an unknown cost to the settlement, the Court is satisfied that the Debtor has conducted the due diligence necessary to meet its burden of showing that the compromise is in the best interest of creditors. The motion to approve the compromise will be granted.

Upon entry of this memorandum, the Clerk shall forward a copy to Patrick T. Fennell, Esq., counsel for the Plaintiff, Kyle R. Weems, Esq., counsel for the Defendant, Deborah L. Fletcher, Esq., counsel for the Parkdale, Inc., Michael E. Hastings, Esq., counsel for the Parkdale, Inc., Luis A. Abreu, Esq., counsel for Mickey T. Dunn and the United States trustee.

Entered on this 8TH day of September, 2005.

/s/ William E. Anderson

William E. Anderson
United States Bankruptcy Judge

---

[18] At the end of the hearing on May 18, 2005, Parkdale requested more time to present exhibits. The court denied that last minute request because Parkdale failed to conduct pre-hearing depositions, failed to file a motion to compel additional discovery prior to the hearing, failed to ask for a continuance prior to the hearing to examine the documents that were produced, and failed to file a pre-hearing objection specifying even a summary of the reasons for the objection.